**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

GREGORY AND MICHELLE SANFORD,

    Plaintiffs,

        v.

OFFICER JOHN O'ROURKE, et al.,

    Defendants.

NO. 3:06-CV-0739

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

Presently before the Court is Defendants Officer John O'Rourke, Officer Jessie Romanchick, and Officer Robert Stelmak's Motion for Summary Judgment.  (Doc. 74.) Defendants' Motion for Summary Judgment will be granted in part and denied in part.  As the municipal defendants were previously dismissed from the case, no failure to train claim remains in Counts I, II, and III.  Such a failure to train claim does not create a claim for supervisory liability, as there were no allegations of any of the Defendants acting as a supervisor, nor was any evidence presented that any of the Defendants acted in a supervisory capacity.  Defendants' motion for summary judgment will be granted as to the Section 1981 claims in Counts I and II, because Plaintiffs have failed to present evidence of racial animus or discriminatory intent and conclusory allegations are insufficient. Summary judgment will be granted in favor of all Defendants as to Plaintiff Michelle Sanford's unlawful detention and investigation claim in Count III, as there is no evidence that a seizure of Plaintiff Michelle Sanford occurred.  Defendants O'Rourke and Stelmak's motion for summary judgment will be granted as to Plaintiff Gregory Sanford, as there is no evidence of a seizure by these Defendants against Mr. Sanford.  However, there is a

question of material fact regarding whether Officer Romanchick's interrogation of Mr. Sanford constituted a seizure, and therefore summary judgment will be denied as to Officer Romanchick. The Court will deny Defendant Romanchick's motion for qualified immunity, because a reasonable person could know of Plaintiff's right to be free from unlawful seizures.  Defendants' motion for summary judgment on the Count IV conspiracy claims will also be granted as to Michelle and Gregory Sanford, as there is no evidence of any agreement or concerted action, or any evidence that could lead to an inference of an agreement or concerted action.

Defendants Romanchick and O'Rourke's motion for summary judgment on Count V's assault claim will be granted as to Michelle Sanford, as there is no evidence that they placed her in imminent apprehension of harm or offensive contact.  As there is a question of material fact regarding Defendant Stelmak's intent, and Michelle Sanford's imminent apprehension of harm or offensive contact, Defendant Stelmak's motion for summary judgment on the assault claim in Count V will be denied.  Defendant O'Rourke's motion for summary judgment on the assault claim in Count V with respect to Plaintiff Gregory Sanford will be granted.  Defendants Romanchick and Stelmak's motion for summary judgment on Count V's assault claim by Plaintiff Gregory Sanford is denied, as there are material questions of fact regarding Defendants' intent, as well as whether there was imminent apprehension on the part of Gregory Sanford. Defendants Romanchick, O'Rourke, and Stelmak's motion for summary judgment on Count V's battery claim will be granted as to Plaintiff Michelle Sanford, as there is no evidence of physical contact between Mrs. Sanford and any of the Defendants.  Defendants O'Rourke and Stelmak's motion for summary judgment on Plaintiff Gregory Sanford's battery claim in Count V will

2

be granted, as there is no evidence that these Defendants made contact with Plaintiff Gregory Sanford.  Defendant Romanchick's motion for summary judgment on Plaintiff Gregory Sanford's battery claim in Count V will be denied, as there is a question of material fact regarding the intent of Defendant Romanchick.  Defendant Romanchick, O'Rourke, and Stelmak's motion for summary judgment will be granted as to Plaintiff Michelle Sanford's false imprisonment claim in Count VI.  Defendant Romanchick, O'Rourke, and Stelmak's motion for summary judgment will be granted as to Plaintiff Gregory Sanford's false imprisonment claim in Count VI.  Defendants Romanchick, O'Rourke, and Stelmak's motion for summary judgment will be granted as to Count VII, as Plaintiffs may not pursue a conspiracy claim against these Defendants due to the single entity doctrine.

The Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1331 ("federal question jurisdiction") and 28 U.S.C. § 1367 ("supplemental jurisdiction").

## BACKGROUND

Plaintiffs Gregory and Michelle Sanford were members of a ski trip staying at the Hilton Scranton and Conference Center during the weekend of February 17, 2006 to February 19, 2006.  (Pls.' Counterstatement of Undisputed Material Facts, ¶ 1, Doc. 86.) Defendants John O'Rourke, Jessie Romanchick, and Robert Stelmak were, at the relevant times, on duty police officers for the City of Scranton.  (Defs.' Statement of Undisputed Material Facts in Supp. of Mot. for Summ. J., ¶ 1, Doc. 75.)

On February 18, 2006, at approximately 11:00 p.m., Defendants O'Rourke,

Romanchick, and Stelmak responded to a call to the Scranton Police regarding a "large fight." (*Id.* ¶ 2.)  The call did not describe the race of the individuals alleged to be involved in the fight.  (*Id.* ¶ 3.)  Defendant Officers Romanchick and O'Rourke were the first two officers to arrive at the scene.  (*Id.* ¶ 4.)  Upon arriving at the Hilton, they were directed to the fifth floor by hotel personnel.  (*Id.* ¶ 5.)

The scene and events that occurred on the fifth floor of the Hilton are highly disputed.  Plaintiffs state that Plaintiff Gregory Sanford, along with Kimm Jones and Christine Jones-Combs, went to fifth floor to retrieve a stereo.  (Doc. 86 ¶ 2.)  After retrieving the stereo, the three headed back to the Sanfords' room.  (*Id.* ¶ 3.)  On the way to the room, Mr. Sanford and Mr. Jones stopped to speak with Joseph Frazier, a hotel employee, before continuing to the room to drop off stereo.  (*Id.* ¶ 4.)  After dropping off the stereo, Mr. Sanford and Mr. Jones reentered the hallway.  (*Id.* ¶ 5.)

Defendants state that as Officers Romanchick and O'Rourke arrived at the scene, they observed a loud group of individuals at the end of the fifth floor hallway.  (Doc. 75 ¶ 6.)  They noted that several individuals in the hallway were yelling, screaming, using obscene language, and causing noise.  (*Id.*)  Plaintiffs dispute this description, and stated that there was no commotion in the hallway at the time the police officers arrived, and that there was no fighting, arguing, or loud music being played.  (Doc. 86 ¶ 6.)  Plaintiffs also state that neither Mr. Sanford nor Mr. Jones were drunk or rowdy, and neither acted in a rude or obnoxious way to any of the hotel employees.  (*Id.* ¶ 8.)

Officers Romanchick and O'Rourke approached Mr. Sanford and Mr. Jones.  According to Defendants, Officer Romanchick asked Gregory Sanford if there was a fight

on the fifth floor, and Mr. Sanford responded by stating "Have you ever heard of a prank call?" (Doc. 75 ¶ 7.)  In contrast, Plaintiffs state that as the police approached, Officer Romanchick pointed a finger in Gregory Sanford's face, and exclaimed "You're not going to be disrespecting me." (Doc. 86 ¶ 9.)  Plaintiffs state that this occurred prior to any of the Plaintiffs speaking to the Defendants.  (*Id.*)  Plaintiffs state that the police officers never identified them by name to the Plaintiffs either during or after the altercation and arrest.  (*Id.* ¶ 24.)

The interaction between Plaintiff Gregory Sanford and Mr. Kimm Jones and Defendant Officers Romanchick and O'Rourke is also disputed.  Mr. Sanford attempted to explain that there was no fight going on, and that everything was under control.  (*Id.* ¶ 11.)  At that time, Mr. Jones attempted to intervene and speak up on Mr. Sanford's behalf (*Id.* ¶ 12.)  However, the police officers would not permit Mr. Jones to speak to Mr. Sanford.  (*Id.*)  According to Plaintiffs, as Mr. Jones attempted to speak to the officers, he was told to shut up.  (*Id.* ¶ 13.)  According to Plaintiffs, Mr. Jones did not yell or curse at the police officers.  (*Id.* ¶ 14.)  Mr. Frazier and Mr. Monahan testified that they told the police that there was no fight or problem going on prior to the police officers approaching and questioning the Plaintiffs.  (*Id.* ¶ 30.) Plaintiffs point to the deposition of Officer Stelmak, who stated that had people told him there was no fight, the police officers would have left.  (*Id.* ¶ 32.)

In contrast, Defendants state that Mr. Sanford used profanity in front of the officers, and specially said "Damn the police." (Doc. 75 ¶¶ 8, 9.)  When Officer Romanchick attempted to speak to Mr. Jones, Mr. Jones said to him "I don't care about

these fucking police." (*Id.* ¶ 11.)  According to Defendants, Mr. Jones was

uncooperative, and then attempted to walk away from Officer Romanchick, stating "I don't

have to tell you nothing." (*Id.* ¶ 14.)  When Officer Romanchick told Mr. Jones he was not

free to leave, Mr. Jones pulled away and said "Don't fucking touch me." (*Id.*)  At that

point, Officer Romanchick struggled with Mr. Jones, placed him in handcuffs, and

explained that he would be detained while the incident was investigated. (*Id.*)  Mr. Jones

continued to struggle with Officer Romanchick. (*Id.*)

Mr. Jones' account differs from that of the police officers.  He stated that the

officers pushed him against his chest, grabbed his arm, pushed him roughly against the

wall, and handcuffed him, without provocation. (Doc. 86 ¶ 15.)  At that time, his face was

smashed against the wall. (*Id.*)  Mr. Jones then asked the police officers why they would

do this to him and told them that he had asthma. (*Id.* ¶ 16.)  Mr. Jones also told the

police officers that the handcuffs were too tight and were hurting him, but the officers did

nothing. (*Id.*) According to Plaintiffs, Mr. Jones was compliant and did exactly as he was

told and did not resist arrest. (*Id.* ¶ 19.)  Christine Jones-Combs, Mr. Jones' wife,

attempted to speak up, but then an officer pushed her in the chest. (*Id.*; Doc. 75 ¶ 35.)

She asked the officer why he was holding her against the wall, and the officer released

her. (Doc. 75 ¶ 37.)  Mrs. Jones-Combs was held by the officer between one (1) and five

(5) seconds. (*Id.*)  Mrs. Jones-Combs was unable to identify the officer who pushed her

besides the description that he was a Caucasian male. (*Id.* ¶ 36.)  She was not

interrogated by any police officers. (*Id.* ¶ 41.)

Officer Romanchick called a "code red" and requested back up vehicles to keep

the crowd of people calm.  (Doc. 75 ¶ 12.)  At the time he called the "code red", the

hallway was crowded with people who were yelling or threatening Officers Romanchick

and O'Rourke.  (*Id.* ¶ 13.)

Officer Stelmak responded to the initial call of a large fight, and responded with

Scranton Police dog, Blitz.  (*Id.* ¶ 19.)  When he reached the fifth floor, Officer Stelmak

found that there was a loud and vocal crowd of people at the end of the hallway, and he

commanded Blitz to bark a few times to let people know there was a dog in the hallway.

(*Id.* ¶ 20.)  Officer Harris also responded to the initial call of a large fight.  (*Id.* ¶ 21.)

When he arrived the situation, people were yelling at each other and at the police.  (*Id.* ¶

22.)  Officer McDonald responded to the "code red" call.  (*Id.*)  When he arrived, he

observed several persons being disorderly, loud, and making a lot of noise.  (*Id.*)  Both

Officers Stelmak and McDonald testified that by the time they arrived at the fifth floor,

Officers Romanchick and O'Rourke had already responded and dealing with the

Plaintiffs.  (Doc. 86 ¶ 26.)  Sergeant Carroll also responded to the call at the Hilton, and

when he arrived, he found the hallway lined with people, some of who were loud and

cursing.  (Doc. 75 ¶ 23.)

According to the Defendants, at the time when Officer Romanchick handcuffed Mr.

Jones, several more males entered the hallway and began yelling profanities.  (*Id.* ¶ 15.)

The crowd was large and became more boisterous towards the police, refused to return

to their rooms, and were yelling profanities.  (*Id.*)  Plaintiffs state that at no point did

Christine Jones-Combs or Kimm Jones use profanity or yell at the police.  (Doc. 86 ¶ 20.)

Rather, according to Plaintiffs, the police officers were yelling and cursing.  (*Id.* ¶ 21.)

7

After the arrest of Mr. Jones, Officer Romanchick led Mr. Jones downstairs through the lobby.  (Doc. 75 ¶ 16; Doc. 86 ¶ 23.)  Mrs. Jones-Combs requested to stay with her husband, and was permitted to do so.  (Doc. 75 ¶ 38.)  Officer Romanchick issued Mr. Jones a citation for disorderly conduct and released him to his wife, Christine Jones-Combs.  (Doc. 75 ¶ 16.)  Mr. Jones plead guilty to disorderly conduct, 18 PA. CONS. STAT. ANN. § 5503(a)(4), after a hearing on the charges, and did not appeal the conviction.  (*Id.* ¶ 27.)

Mrs. Michelle Sanford was in her room when the incident began, and opened her door to find "a lot of commotion in the hallway."  (Doc. 75 ¶ 29.)  Mrs. Sanford did not approach any of the officers or any of the other guests, but remained standing in the doorway.  (*Id.* ¶ 30.)  After Gregory Sanford returned to his hotel room, police officers knocked and asked to come into the room.  (*Id.* ¶ 31.)  Michelle Sanford answered the door, and told the officers that she was only going to allow one officer in the room, and the officers complied with that request.  (*Id.*)  Sergeant Carroll entered and spoke with Mr. Sanford in his room.  (*Id.* ¶ 24.)  The resultant conversation was the only interaction Michelle Sanford had with any police officers.  (*Id.*)  Mrs. Sanford stated that she was not interrogated by any police officers, was not detained by any police officer, was not physically confronted by any police officer, and did not see any police officers pull, push or shove anyone.  (*Id.* ¶ 33.)

After the Hilton placed the initial 911 call, it placed another call to 911 attempting to cancel the call.  (Doc. 75 ¶ 25.)  However, even if the call had been cancelled or management had told the officers that there was no longer a problem, the officers had a

duty to investigate.  (*Id.* ¶ 26.)

Mr. Kimm Jones and Mrs. Christine Jones-Combs both testified in their depositions that they felt the Defendants were motivated by racial animus, and if they had been Caucasian, the police officers would not have been as hostile, would have communicated more effectively, and would not have pushed them.  (Doc. 86 ¶¶ 35, 36.)

On April 7, 2006, Plaintiff filed their Complaint against the City of Scranton, the Scranton Police Department, and six (6) "John Doe" police officers.  (Doc. 1.)  On September 29, 2006, the Court issued an Order amending the caption of the case to replace the unnamed "John Doe" Defendants with the names of the now identified officers, Officer John O'Rourke, Officer Jessie Romanchick, Officer Robert Stelmak, Officer Thomas McDonald, Officer Donald Hofsummer, and Officer Joseph Harris.  (Doc. 37.)  Defendants the City of Scranton and the Scranton Police Department were dismissed from the case on all counts on November 7, 2006. (Doc. 42.)  On January 4, 2008, the Court approved a stipulation dismissing Officers McDonald, Hofsummer, and Harris from the case.  (Doc. 83.)  The remaining Defendants are Officers O'Rourke, Romanchick, and Stelmak.

The present Motion for Summary Judgment was filed on December 10, 2007.  The motion is fully briefed and ripe for disposition.

## LEGAL STANDARD

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

9

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. *See id.* at 248. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id.*

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law. *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983). The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All reasonable doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *See Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version

10

of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a matter of law.  *See Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).  In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

## DISCUSSION

### I.      Counts I, II, and III - Failure to Train Claims

Defendants O'Rourke, Romanchick, and Stelmak first argue that they should be granted summary judgment on Plaintiffs' failure to train claims in Counts I through III, as the City of Scranton and Scranton Police Department were dismissed from the case on November 7, 2006.  (Doc. 42.)  The failure to train claims against the municipality has been dismissed.  *See Monell v. Dep't of Soc. Servs. Of the City of N.Y.*, 436 U.S. 658, 691-94 (1978).  Failure to train claims are generally brought against a municipality, not individual defendants.

In *Brown v. Grabowski*, 922 F.2d 1097 (3d Cir. 1990), the Third Circuit Court of Appeals noted that failure to train cases may be brought as a municipal liability claim or an individual capacity claim.  *Id.* at 1119.  The *Brown* case considered a suit against the Borough of Roselle, the Roselle Police Department, and Chief of Police of the Borough of Roselle.  *Id.*  Suit against the Chief of Police was brought in both his individual and official

11

capacities.  *Id.*  The court noted that a claim could be brought against the Chief of Police in his individual capacity for failure to train and supervise his officers properly.  *Id.*

Essentially, such a failure to train claim would be considered a supervisory liability claim.  *See Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001).  First, Plaintiffs have not alleged that Officers Romanchick, Stelmak, or O'Rourke were in any kind of supervisory position.  Second, Plaintiffs have failed to present any evidence that any of these officers were in a supervisory position such that one failed to train or supervise the others.  Therefore, Defendants Romanchick, Stelmak, and O'Rourke's motion for summary judgment will be granted with respect to all failure to train claims in Counts I through III.

## II.   Counts I and II - Section 1981 Claims

Gregory and Michelle Sanford, who are African-American, claim that the Defendants O'Rourke, Romanchick, and Stelmak committed racial discrimination and assault and battery against them in violation of 42 U.S.C. § 1981.  They argue that the Defendants interrogated and harassed the Plaintiffs even though no altercation had occurred or was occurring in the hotel.

Section 1981 states, in relevant part:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no others.

42 U.S.C. § 1981(a).  Section 1981 creates a civil cause of action against private actors

and does not require state discriminatory action.  *Brown v. Philip Morris, Inc.*., 250 F.3d 789, 797 (3d Cir. 2001).

To establish a prima facie case under Section 1981, a plaintiff must establish three (3) elements: (1) the plaintiff is a member of a racial minority; (2) there was an intent to discriminate on the basis of race by the defendant; and (3) plaintiff was subject to an act of discrimination.  *Id.*  (quoting *Yelverton v. Lehman*, Civ. A. No. 94-6114, 1996 WL 296551, at *7 (E.D. Pa. June 3, 1997), *aff'd mem.* 171 F.3d 1012 (3d Cir. 1999)).  *See also Warren v. Twp. of Derry*, Civ. A. No. 1:04-CV-2798, 2007 WL 870115, at *10 (M.D. Pa. Mar. 20, 2007) (Conner, J.).

Section 1981 cases are also subject to the burden shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Therefore, if a "plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the defendant's conduct."  *Schultz v. Wilson*, Civ. A. No. 1:04-CV-1823, 2007 WL 4276696, at *4, (M.D. Pa. Dec. 4, 2007) (Conner, J.). The burden then shifts to the plaintiff to demonstrate that the nondiscriminatory reason was prextext for discrimination.  *Id.*

Specifically, the Defendants assert that the evidence in the record fails to establish discriminatory intent as required by Section 1981.  "Because 'those with racist intentions do not always verbalize their pernicious motives,' a plaintiff may prove discriminatory intent based on 'the totality of the circumstances.'" *Warren v. Twp. of Derry*, Civ. A. No. 1:04-CV-2798, 2007 WL 870115, at *10 (M.D.Pa. Mar. 20, 2007) (Conner, J.) (citing *Whichard v. Cheltenham Twp.*, Civ. A. No. 95-CV3969, 1996 WL 502281, at *8 (E.D.Pa.

Aug.29, 1996)).  The "totality of circumstances" may include disparate impact, departures from procedural norms, a history of discriminatory actions, and other relevant facts. *Flagg v. Control Data*, 806 F.Supp. 1218, 1223 (E.D. Pa. 1992).  However, "[c]onclusory allegations of generalized racial bias do not establish discriminatory intent." *Id.* Furthermore, disparate impact alone is insufficient, but rather the disparate impact must be traced to purposeful discrimination.  *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 389-91 (1982).

In the Middle District of Pennsylvania case *Schultz*, the court found that the plaintiffs failed to demonstrate sufficient evidence to survive a summary judgment motion regarding the inference of intent to discriminate based upon race.  2007 WL 4276696, at *4.  The court noted that the evidence indicated that the conduct dealt with preventing a potentially serious barroom brawl.  *Id.* at *5.  Although one of the defendants uttered a racial slur, the court found that it was an "isolated derogation," and that it was not directed at the plaintiffs, nor did the plaintiffs personally hear the offensive language.  *Id.*

Other cases from this Circuit have similarly refused to allow a summary judgment claim without evidence regarding an inference to discriminate.  In *Warren*, Judge Conner of the Middle District of Pennsylvania granted in part and denied in part defendants' summary judgment motion.  The motion was denied as to a defendant who used a racial slur in connection with his action, but the motion was granted with respect to a defendant who did not use a racial slur.  *See also  Whichard v. Cheltenham Twp*., Civ. A. No. 95-CV3969, 1996 WL 502281, at *8 (E.D. Pa. Aug. 29, 1996) (allowing a § 1981 claim to survive summary judgment when arresting officer yelled a racial epithet).

14

Similarly, in *Antoine ex rel. Antoine v. Rucker*, Civ. A. No. 03-3738 (DRD), 2006 WL 1966649, (D.N.J. July 12, 2006), the court denied summary judgment on the intent prong of a Section 1981 claim where plaintiffs were Haitian or of Haitian descent. According to witness testimony, a defendant police officer may have said "I'll teach you *American* law" in response to one student identifying himself as a law student.  In that instance, the court held that such a statement could sustain an inference of discriminatory intent or animus.

In *Brady v. Cheltenham Twp.*, Civ. A. No. 97-4655, 1998 WL 164994, *5 (E.D.Pa. April 9, 1998), Judge Yohn noted that "'Because this [§ 1981] claim requires proof of intent, an element difficult to establish, summary judgment should be granted with caution.'"  *Id.* (citing *Bronze Shields, Inc. v. New Jersey Dept. of Civil Service*, 667 F.2d 1074, 1087 (3d Cir.1981)).  Although noting the difficulty of granting summary judgment on the intent element, the court granted summary judgment when a police officer described the plaintiff as "an elderly black woman."  *Id.*   The court held that "[a] mere descriptive phrase in which a police officer observes an individual's race in context with other identifying characteristics is not evidence from which racial animus may be inferred."  *Id.*  Beyond that statement, the court noted

> In the instant case, no issue of material fact exists regarding plaintiffs' allegations of racial animus. No evidence has been offered showing that these individual officers, their department, or Cheltenham Township has a history of discriminatory actions, or that their conduct has had a history of disparate impact on minority groups. No evidence has been offered showing that similarly situated white citizens have been treated differently. No evidence has been offered that supports a specific inference of racial animus, rather than a racially neutral disregard for the constraints of the Fourth

15

Amendment.

*Id.* at *7 (citations omitted).  The court looked at these other facts, or rather lack of, and held that the evidence did not support the conclusory allegations of racial animus, which were insufficient to create a question of material fact for a jury.  *Id.*

In this case, Plaintiffs are African-American, and therefore satisfy the first element of being a member of a racial minority.  As to the second element of discriminatory intent, Plaintiffs argue that they have demonstrated evidence of a discriminatory animus on the part of the Defendants.  Specifically, Plaintiffs point to deposition testimony that the police officers were told that there was no fight, but continued to question the Plaintiffs upon their arrival at the Hilton's fifth floor. (Frazier Dep. 30:12-32:9, April 10, 2007, Doc. 87 Ex. 5; Monahan Dep. 33:1-34:19, April 10, 2007, Doc. 87 Ex. 13.)  Although this is disputed by the Defendants, the Court will view this evidence in the light most favorable to the non-moving party.  Plaintiffs also point to the fact that Officer Romanchick called a "code red", which they state is reserved for dire police situations.  (O'Rourke Dep. 36:14-22, April 19, 2007, Doc. 76 Ex. 11.)  However, Officer Romanchick's deposition offers a different description of the meaning of code red.  (Romanchick Dep. 44:18-24, April 19, 2007, Doc. 76 Ex. 12.)  In contrast, Officer Romanchick stated that "a code red is nothing more than priority of the channel, which means no officers with routine traffic should transmit on that zone.  Basically what I'm telling them is I want the air." (Romanchick Dep. 44:20-24, Doc. 76 Ex. 12.)

Plaintiffs also point to deposition testimony as evidence of discriminatory intent. Mr. Kimm Jones and Mrs. Christine Jones-Combs stated in their deposition testimony that they believe that if they were Caucasian, that the police officers would not have been

as hostile, would have communicated more effectively, and would not have pushed the

Plaintiffs. (Jones Dep. 63:2-64:10, April 30, 2007, Doc. 87 Ex. 2; Jones-Combs Dep.

53:14-54:19, April 30, 2007, Doc. 87 Ex. 1.)

In this case, Plaintiffs have failed to demonstrate evidence of racial animus,

directly or indirectly.  There is no indicia of racial animus on the part of these three (3)

Defendants.  No Defendants made any direct statements that would lead to the inference

that their actions were racially motivated.  None of the three (3) Defendants made any

derogatory statements. At the time the Defendants received the call regarding the fight,

there was no description of the race of the people involved.  In fact, there was testimony

by police officers that there was no description as to the sex, race or number of people

involved in the fight at the Hilton Hotel.  (Hofsummer Dep. 13:9-21, April 20, 2007, Doc.

76 Ex. 9.)

Similarly, there is no evidence presented by Plaintiffs to indirectly infer that the

Defendants' actions were racially motivated.  Like *Brady*, the Plaintiffs have offered no

evidence showing that the individual Officers Romanchick, O'Rourke, or Stelmak have a

history of discriminatory actions.  Nor is there evidence that their conduct has had a

history of disparate impact on minority groups. No evidence has been offered showing

that similarly situated white citizens have been treated differently. As in *Brady*, no

evidence has been offered that supports a specific inference of racial animus.  Plaintiffs'

best evidence consists of statements by the Plaintiffs that they believe they would have

been treated differently had they not been African-American.  Such a conclusory

allegation is insufficient to survive at the summary judgment standard.  At best, there may

be a racially neutral disregard for the rights of the Plaintiffs and the other Hilton guests.

Therefore, summary judgment will be granted in favor of Defendants Romanchick, O'Rourke, and Stelmak on Plaintiffs Gregory and Michelle Sanford's claims in Counts I and II.

### III.    Count III - Section 1983 - Unlawful Detention and Investigation

Plaintiffs Michelle and Gregory Sanford bring claims pursuant to 42 U.S.C. § 1983. "To establish a claim under § 1983, a plaintiff must allege (1) a deprivation of a federally protected right, and (2) commission of the deprivation by one acting under color of state law." Lake v. Arnold, 112 F.3d 682, 689 (3d Cir.1997).  A Section 1983 claim for unlawful detention, or false imprisonment, may be brought pursuant to the Fourth and Fourteenth Amendments.  *Potts v. City of Philadelphia*, 224 F.Supp.2d 919, 936 (E.D. Pa. 2002). Plaintiffs' Complaint, as well as their brief in response to the Defendants' summary judgment motion, reflects that this particular claim for unlawful detention was brought pursuant to the Fourth Amendment.

In order to prevail on a unlawful detention claim under Section 1983, Plaintiffs must demonstrate evidence that: (1) a Fourth Amendment seizure occurred, and (2) the seizure was without probable cause.  *Gavlock v. Deniker*, Civ. A. No. 4:04-CV-02447, 2005 WL 1273582, at *2 (M.D. Pa. May 27, 2005) (McClure, J.) (citing *Dowling v. City of Philadelphia*, 855 F.2d 136, 141 (3d Cir. 1988)).

A person has been seized, within the meaning of the Fourth Amendment,  "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).  "[T]he protection against unreasonable seizures also extends to 'seizures

18

that involve only a brief detention short of traditional arrest.'" *I.N.S. v. Delgado*, 466 U.S. 210, 215 (1984) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975)).  In *Brower v. County of Inyo*, the Supreme Court took pains to emphasize the importance of the state actor's intention:

> a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*.

489 U.S. 593, 596-97 (1989).  "[A] seizure occurs whenever an officer uses physical force or a show of authority to restrain a person's freedom to walk away, and a reasonable person would not feel free to walk away."  *Gavlock*, 2005 WL 1273582, at *9.  "It is well established that 'a seizure does not occur simply because a police officer approaches an individual and asks a few questions."  *United States v. Neal,* No. 06-4012, 2008 WL 821074, at *2 (3d Cir. Mar. 28, 2008) (non-precedential) (citing *Florida v. Bostick*, 501 U.S. 429, 434 (1991)).  Rather, the seizure also requires the show of authority or physical restraint.

In this case, there was no seizure within the meaning of the Fourth Amendment as to Mrs. Michelle Sanford by any of the Defendants. (M. Sanford Dep. 18:18-25, April 30, 2007, Doc. 76 Ex. 7.)  Mrs. Sanford stated in her deposition that when she opened the door, she stood in the doorway, and did not approach any police officers or other guests. (M. Sanford Dep. 18:18-25, Doc. 76 Ex. 7.) When a knock occurred on Mrs. Sanford's door, two (2) police officers asked to enter the room.  (M. Sanford Dep. 19:2-8, Doc. 76

Ex. 7.)  Mrs. Sanford stated that only one could come into the room, and the police officers complied with that request.  (M. Sanford Dep. 19:2-22, Doc. 76 Ex. 7.)   Mrs. Sanford stated that the only conversation that she had with the police was that conversation in her hotel room.  (M. Sanford Dep. 23:20-25, Doc. 76 Ex. 7.)  Mrs. Sanford also stated that she herself was never interrogated by any police officers, and the only interaction she had with a police officer was when she was physically in the same room as the police officer questioning her husband.  (M. Sanford Dep. 30:22-31:4, Doc. 76 Ex. 7.)  When asked if she was detained by any police officers at any time, Mrs. Sanford stated that she had not.  (M. Sanford Dep. 33:13-15, Doc. 76 Ex. 7.)

In this case, no reasonable person would have believed that they were not free to leave under the circumstances faced by Mrs. Sanford.  When Mrs. Sanford requested that only one officer enter the room, the police officers complied.  Mrs. Sanford was not interrogated at any time, and her only interaction with the police officers occurred when a police officer was questioning her husband in her room.  As no Fourth Amendment seizure occurred, the Court need not consider the issue of probable cause.  Plaintiffs do not dispute Defendants' arguments regarding Michelle Sanford's alleged detention.  Therefore, Defendants Romanchick, Stelmak, and O'Rourke's motion for summary judgment on the unlawful detention and investigation claim by Plaintiff Michelle Sanford will be granted.

Mr. Gregory Sanford's deposition demonstrates that he had greater interaction with the police officers at the Hilton than his wife.  He stated in his deposition that Defendant Romanchick approached him with a finger in his face and asked where the

fight was.  (G. Sanford Dep. 44:23-45:7, April 30, 2007, Doc. 76 Ex. 6.)  At that time,

Defendant Romanchick continued to ask him where the fight was, and Mr. Sanford noted

that he said maybe another floor, and that perhaps it was a prank call.  (G. Sanford Dep.

45:20-46:4, Doc. 76 Ex. 6.)  When asked what happened next, Mr. Sanford stated that "I

was kind of, like, well, roughed up.  And I was asked to prove - pull I.D. out, show I.D."

(G. Sanford Dep. 46:7-8, Doc. 76 Ex. 6.)  He said that during the course of the

questioning, and while the police officers were arriving, there was pushing and shoving,

and that he was "being bumped around."  (G. Sanford Dep. 48:25-49:11, Doc. 76 Ex. 6.)

Mr. Sanford stated that the officers were bumping him, but that he did not know which

officers specifically, besides Officer Romanchick.  (G. Sanford Dep. 49:9-22, 55:1-4, Doc.

76 Ex. 6.)  He noted that not all of the police officers were bumping or interrogating him,

and that "I can't tell you which ones, because I was - when Mr. Romanchick first asked

me for I.D., my back was to my door in my room.  By the time we finished I was turned

around the other way because they kept coming up and bumping me."  (G. Sanford Dep.

49:14-22, Doc. 76 Ex. 6.)

Mr. Sanford stated that the only police officer who questioned him was Defendant

Romanchick.  (G. Sanford Dep. 54:16-23, Doc. 76 Ex. 6.)  He was unsure of the length of

time that he was questioned for, but believed that it was "awhile."  (G. Sanford Dep.

54:10-15, Doc. 76 Ex. 6.)  At one point, Mr. Sanford testified that the police officers

focused on Mr. Kimm Jones, and at that time stopped speaking with Mr. Sanford, and did

not return their focus to him.  (G. Sanford Dep. 57:1-58:4, Doc. 76 Ex. 6.)  Mr. Sanford

stated that, at the time, he left the hallway and entered the room of another guest named

Shannon.  (G. Sanford Dep. 58:6-23, Doc. 76 Ex. 6.)  Mr. Sanford testified that "when

they closed the door, the officer - one of the officers - I don't know who it was - put a shoulder on the door, like tried to come in and get me.  He put his shoulder on the door." (G. Sanford Dep. 59:1-5, Doc. 76 Ex. 6.)  Mr. Sanford did not know which police officer attempted to enter the room.  (G. Sanford Dep. 59:6-7, Doc. 76 Ex. 6.)

Mr. Sanford testified that he then left the room and reentered the hallway.  (G. Sanford Dep. 59:13-14, Doc. 76 Ex.6.)  He testified that when he reentered the hallway, "[o]ne of the officers, he put his arm, like, across me like in case I was going over there. Like, they were sectioning off everything that was happening over here."  (G. Sanford Dep. 59:16-19, Doc. 76 Ex. 6.)  Although the police officer touched him and put his arm out to stop him, Mr. Sanford went around him, and went back to his room.  (G. Sanford Dep. 59:22-60:3, Doc. 76 Ex. 6.)  No one attempted to stop him from returning to his room.  (G. Sanford Dep. 60:4-6, Doc. 76 Ex. 6.)

After returning to his room, a police officer knocked on the door, which Mrs. Sanford answered, and entered to speak to Mr. Sanford. (G. Sanford Dep. 60:9-22, Doc. 76 Ex. 6.)  Mr. Sanford stated that the officer, who Mr. Sanford could not identify, told him that he had thirty (30) minutes to leave the hotel, or he would be arrested.  (G. Sanford Dep. 60:9-22, Doc. 76 Ex. 6.)  Sergeant Thomas Carroll, a non-party to this suit, identified himself in his deposition as the police officer who entered the room to speak to Mr. Sanford. (Carroll Dep. 48:5-18, April 24, 2007, Doc. 76 Ex. 14.)

Plaintiff Gregory Sanford argues that he was unlawfully detained and investigated, and that he was not free to walk away.  Plaintiff Gregory Sanford specifically references his investigation in the hallway, and the restraint by one officer that prevented him from going to where Mr. Kimm Jones was located.  According to Mr. Sanford's deposition, he

22

was unable to identify several of the police officer who allegedly detained him.  First, he was unable to identify which officer attempted to enter the guest room by placing his shoulder in the door, after Mr. Sanford had left the hallway.  Second, Mr. Sanford was unable to identify which officer put out his arm to stop him once he reentered the hallway.  There is no evidence that these actions were taken by Defendants Romanchick, Stelmak, or O'Rourke.  Furthermore, in those two instances, a reasonable person would feel free to leave.  In fact, Mr. Sanford did leave in those two instances.  He stated that after the officer attempted to enter the guest room, he decided to reenter the hallway of his own accord.  Similarly, when the police officer put out his arm to stop him, Mr. Sanford walked around the officer, and no one attempted to stop him from returning to his room.  Therefore, a reasonable person would feel that he was free to leave.

Mr. Sanford was not detained by Defendants Romanchick, Stelmak, or O'Rourke during the time when he was questioned in his room.  Although Mr. Sanford could not identify the police officer, Sergeant Carroll identified himself as the questioning police officer in his deposition.  Therefore, Mr. Sanford may not base an unlawful investigation and detention claim on that occurrence.

The last occurrence that Mr. Sanford claims created an unlawful detention is his questioning in the hallway of the Hilton.  Plaintiff Gregory Sanford has failed to present any evidence that Defendant Stelmak was involved in any questioning or interrogation.  In fact, when asked, Mr. Sanford stated that the only officer who questioned him was Defendant Romanchick.   (G. Sanford Dep. 54:16-23, Doc. 76 Ex. 6.)  Defendant Stelmak's motion for summary judgment as to Plaintiff Gregory Sanford will be granted as to this claim.

23

As to Defendant Romanchick, there is a question of material fact as to whether a reasonable person would feel free to leave.  In this case, Officer Romanchick told Mr. Jones that he was not free to leave.   (Romanchick Dep. 50:1-11, April 19, 2007, Doc. 76 Ex. 11.)  Officer Romanchick blocked Mr. Jones, and informed him that he was not free to leave.  (Romanchick Dep. 50:1-11, Doc. 76 Ex. 11.)  As there is evidence that Mr. Sanford was present at the time Officer Romanchick told Mr. Jones he was not free to leave, there is a question of material fact as to whether a reasonable person would feel free to leave at that time.  The fact that Mr. Jones was told that he was not free to leave after attempting to walk away could lead a reasonable person in the presence of Mr. Jones and Officer Romanchick to believe that he too was not free to leave.  The fact that Mr. Sanford actually left and entered a hotel room is not dispositive as to whether a reasonable person would feel free to leave.  Defendant O'Rourke was present in the hallway with Defendant Romanchick and Plaintiff Gregory Sanford at the time that Officer Romanchick told Mr. Jones that he was not free to leave.  However, the act of being present at the time alone is not enough to create a seizure on the part of Defendant O'Rourke.

Therefore, Defendant O'Rourke's motion for summary judgment against Plaintiff Gregory Sanford will be granted.  As there is a question of material fact regarding whether a reasonable person would feel free to leave in Mr. Sanford's circumstances, Defendant Romanchick's motion for summary judgment as to Gregory Sanford will be denied.

**IV.     Count IV - Conspiracy Pursuant to §§ 1983 and 1985**

24

In Count IV, Plaintiffs bring a claim pursuant to 42 U.S.C. §§ 1985 and 1983, alleging that the Defendants' conspired to pursue a meritless investigation of a fight, when no objective evidence supported the suspicion of a fight.

Section 1985(3) creates a statutory provision regarding conspiracy to deprive a person of his or her right to equal protection of the law on the basis of his or her race. Section 1985(3) makes actionable private conspiracies to deprive a citizen–on the basis of race–of the equal enjoyment of rights secured to all, and does not require action 'under color of state law.' *Griffin v. Breckenridge*, 403 U.S. 88 (1971). To succeed under § 1985(3), Plaintiffs must demonstrate evidence of: (1) a conspiracy; (2) motivated by a race-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws; (3) an act in furtherance of the conspiracy; and (4) an injury to person or property or the deprivation of any right or privilege of a citizen of the United States. *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 253-54 (3d Cir. 1999) (quoting *Lake v. Arnold*, 112 F.3d 682, 685 (3d Cir. 1997)); *see also Griffin*, 403 U.S. at 102-103.

In alleging a Section 1985 conspiracy claim,

> The plaintiff's allegations must be supported by facts bearing out the existence of the conspiracy and indicating its broad objectives and the role each defendant allegedly played in carrying out those objectives. Bare conclusory allegations of "conspiracy" or "concerted action" will not suffice to allege a conspiracy. The plaintiff must expressly allege an agreement or make averments of communication, consultation, cooperation, or command from which such an agreement can be inferred.

*Flanagan v. Shively*, 783 F.Supp. 922, 928 (M.D.Pa. 1992) (McClure, J.), *aff'd* 980 F.2d

722 (3d Cir. 1992), *cert. denied*, 510 U.S. 829 (1993).  As discussed in this Court's previous November 7, 2006 (Doc. 42) Memorandum and Order, the Plaintiffs failed to allege sufficient allegations of concerted action.  Furthermore, Plaintiffs have presented no evidence regarding any concerted action.  No evidence has been presented regarding any agreement, communication, consultation, cooperation, or command from which an agreement could be conferred.  *See Collins v. Sload*, 212 Fed. App'x 136, 141-42 (3d Cir. 2007) (non-precedential) (holding that there was no conspiracy when the exhibits did not support violations of a Section 1985).  As Plaintiffs have failed to present evidence of a conspiracy by Defendants Romanchick, Stelmak, and O'Rourke, Plaintiffs' Section 1985 conspiracy claim fails, and summary judgment will be granted on the Section 1985 claim in favor of all Defendants.

Under 42 U.S.C. § 1983, every person who, under color of state law, subjects any citizen of the United States to the deprivation of any federal right shall be liable to the party injured.  42 U.S.C. § 1983.  In order to establish a conspiracy claim against the Defendants pursuant to Section 1983, there is a requirement of "(1) an actual violation of a right protected under § 1983 and (2) actions taken in concert by the defendants with the specific intent to violate the aforementioned right."  *Williams v. Fedor*, 69 F.Supp.2d 649, 665 (M.D. Pa. 1999) (Vanaskie, J.), *aff'd* 211 F.3d 1263 (3d Cir. 2000) (citing *Kerr v. Lyford*, 171 F.3d 330, 340 (5th Cir. 1999)).  "'To demonstrate a conspiracy under § 1983, a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.'" *Id*. at 666  (citing *Parkway Garage, Inc. v. City of Phila*., 5 F.3d 685, 700 (3d Cir.1993)).

As discussed previously, Plaintiffs Gregory and Michelle Sanford have failed to demonstrate evidence of concerted action, an agreement, or any inference of an agreement between Defendants Romanchick, O'Rourke, and Stelmak. Therefore, Defendants' motion for summary judgment will be granted as to the Section 1983 claim for conspiracy as to all Defendants.

### V.    Qualified Immunity

Defendants further argue that summary judgment should be granted on the basis of a qualified immunity defense. The only remaining federal claim in this case is the § 1983 claim for unlawful detention pursuant to the Fourth Amendment by Plaintiff Gregory Sanford against Defendant Jessie Romanchick.

The doctrine of qualified immunity provides "government officials performing discretionary functions . . . [a shield] from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When applicable, qualified immunity is not only a defense to liability, but immunity from suit altogether, shielding officials from the burdens of discovery and costs of trial. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). A defendant bears the burden of establishing that he is entitled to qualified immunity. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 142 n. 15 (3d Cir. 2001). In answering the question of whether a particular defendant is entitled to qualified immunity, the Court must first determine whether a constitutional violation has occurred. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Court must then resolve the issue of whether the constitutional right was clearly

27

established at the time of the alleged violation. *Id.* "The relevant, dispositive inquiry in

determining whether a right is clearly established is whether it would be clear to a

reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at

202. Qualified immunity is an objective question to be decided by the Court as a matter

of law. *Doe v. Groody*, 361 F.3d 232, 238 (3d Cir. 2004). Further, the United States

Supreme Court has repeatedly stressed the importance of resolving immunity questions

at the earliest possible stages of litigation. *Curley v. Klem*, 298 F.3d 271, 277 (3d Cir.

2002). Indeed, qualified immunity "provides ample protection to all but the plainly

incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341

(1986). However, a decision on the issue of qualified immunity would "be premature

when there are unresolved disputes of historical fact relevant to the immunity analysis."

*Wright v. City of Phila.*, 409 F.3d 595, 599 (3d Cir. 2005) (quoting *Curley*, 298 F.3d at

278).

Here, viewing the facts in the light most favorable to Plaintiff, the Court finds that

Defendant Romanchick's alleged conduct – the interrogation by Defendant Romanchick

of Gregory Sanford – could be construed as violating constitutional rights of which a

reasonable person would have known, namely, the right to be free unlawful seizures. It is

for the jury to resolve the "disputed historical facts material to the qualified immunity

question." *Carswell v. Borough of Homestead*, 381 F.3d 235, 242 (3d Cir. 2004). Based

on the disputed material facts presented here, the Court cannot hold as a matter of law

that Defendant Romanchick is entitled to qualified immunity. Therefore, Defendant

Romanchick's motion for summary judgment on the basis of qualified immunity as to

28

Plaintiff Gregory Sanford's Section 1983 unlawful detention claim will be denied.

## VI.    Supplemental Jurisdiction

Plaintiffs' Complaint alleges several causes of action under Pennsylvania law, namely, assault, battery, false imprisonment, and conspiracy.  As the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a), the Court will consider the pendant state law claims.

### A.    Count V - Assault and Battery

_____In Pennsylvania, "[a]ssault is an intentional attempt by force to do an injury to the person of another, and a battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person."  In *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994), a case involving an allegation of assault and battery by a police officer, the Supreme Court of Pennsylvania explained that

> A police officer may use reasonable force to prevent interference with the exercise of his authority or the performance of his duty.  In making a lawful arrest, a police officer may use such force as is necessary under the circumstances to effectuate the arrest.  The reasonableness of the force used in making the arrest determines whether the police officer's conduct constitutes an assault and battery.

*Id.*  Although *Renk* occurred in the making of an arrest, the Supreme Court of Pennsylvania did consider that reasonable force may be used "to prevent interference with the exercise of his authority or the performance of his duty."  *Id.*  Therefore, the issue of reasonable force may also be considered in a case where no arrest is made.

### 1.    Assault

To succeed on an assault claim in Pennsylvania, plaintiff must show that the

29

defendant "intentionally caused an imminent apprehension of a harmful or offensive bodily contact in [p]laintiff." *Lakits v. York*, 258 F.Supp.2d 401, 407 (E.D. Pa. 2003) (citing *Sides v. Cleland*, 648 A.2d 793, 796 (Pa. Super. 1994); Restatement (Second) of Torts § 21)).  The plaintiff must actually be put in a state of immediate apprehension. *See* Restatement (Second) of Torts § 21.

In Plaintiff Michelle Sanford's deposition, she testified that she was not interrogated by the police, nor did she see any police officer push, shove, or grab anyone.  (M. Sanford Dep. 20:15-20, 32:17-18, Doc. 76 Ex. 7.)  The evidence demonstrates that Michelle Sanford was not put in imminent apprehension of harmful or offensive bodily contact by Defendants O'Rourke or Romanchick.  There is no evidence that any actions taken by these Defendants created an imminent apprehension on the part of Plaintiff Michelle Sanford.  Therefore Defendants O'Rourke and Romanchick's motion for summary judgment on Plaintiff Michelle Sanford's assault claims will be granted.

However, Plaintiff Michelle Sanford's deposition testimony demonstrates evidence of an assault when she was in the doorway of her hotel room.  (M. Sanford Dep. 16:11-14, Doc. 76 Ex. 7.)  This alleged assault occurred by the presence of the Police dog, Blitz.  When asked about the false imprisonment claim, Mrs. Sanford stated that the officer with the dog was the person who acted in the manner described by the Complaint.  (M. Sanford Dep. 33:1-12, Doc. 76 Ex. 7.)  Mrs. Sanford further testified that the dog was there the entire time that she stood in the doorway.  (M. Sanford Dep. 38:4-7, Doc. 76 Ex. 7.)  When asked as to why she stayed in the doorway, she testified that her husband was outside, and therefore did not go back into the room.  (M. Sanford Dep. 38:4-7, Doc. 76

Ex. 7.)  There is a question of material fact as to the imminent apprehension of harm to

Mrs. Sanford, as demonstrated by the fact that she remained in the doorway, as she did

not venture outside the room.

Plaintiffs provide, as evidence of the intent element of assault, the deposition of

Christine Jones-Combs.  Mrs. Jones-Combs testified that officer with the dog was

threatening people in the hallway and that the dog was in an attack position.  (Jones-

Combs Dep. 37:21-38:1, Doc. 87 Ex. 1.)  She also said that the dog appeared to be very

loud and upset.  (Jones-Combs Dep. 78:-24-79:4, Doc. 87 Ex. 1.)  Similarly, Mr. Sanford

stated that the officer with the dog, "kept saying his dog was in attack mode and he was

going to start biting." (G. Sanford Dep. 80:2-5, Doc. 76 Ex. 6.)  Officer Stelmak

maintained in his deposition that although the dog was barking, he was not threatening

anyone or instigating the dog.  This is a genuine issue of material fact and is therefore, a

matter for the jury to decide.  Defendant Stelmak's motion for summary judgment on

Plaintiff Michelle Sanford's assault claim will be denied.

Defendants claim that Plaintiffs have failed to specifically identify the officer who

committed the assault against Mrs. Sanford.  However, in her deposition, Mrs. Sanford

specifically says that it was the officer with the dog that put her in imminent apprehension

of bodily harm.  Because Officer Stelmak was the only officer with a dog on the scene,

and has testified in his deposition that he accompanied Police dog Blitz, Plaintiff Michelle

Sanford has, clearly identified Defendant Stelmak as the officer who allegedly committed

an assault, despite her ability to identify him by name.

Plaintiff Gregory Sanford also makes a claim for assault against Defendants

Romanchick, O'Rourke, and Stelmak.  Evidence has been presented regarding Officer

Romanchick's actions with respect to Mr. Sanford.  Mr. Sanford testified that Officer Romanchick "approached me with his finger in my face."  (G. Sanford Dep. 45:4-7, Doc. 87 Ex. 3.)  Mr. Sanford also testified that Officer Romanchik "bumped" him.  (G. Sanford Dep. 55:1-4, Doc. 87 Ex. 3.)  There is a question of material fact as to the imminent apprehension of harm of Mr. Sanford, as well as to the intent of Officer Romanchick. Therefore, summary judgment as to Defendant Romanchick will be denied as to Plaintiff Gregory Sanford's assault claim.

There is no evidence that Defendant O'Rourke acted in any way to cause imminent apprehension of harmful or offensive bodily contact in Plaintiff Gregory Sanford. Although Officer O'Rourke accompanied Officer Romanchick, this alone is insufficient to show that Officer O'Rourke put Plaintiff Gregory Sanford in imminent apprehension of harmful or offensive contact.

As discussed in Michelle Sanford's claim for assault, Gregory Sanford's claim for assault against Defendant Stelmak is based upon Defendant Stelmak's use of the Police dog Blitz.  Mr. Sanford testified that "[t]he dog was inches away from me, growling."  (G. Sanford Dep. 83:9-11, Doc. 87 Ex. 3.)  Mr. Sanford also testified that the officer with the dog, "kept saying his dog was in attack mode and he was going to start biting."  (G. Sanford Dep. 80:2-5, Doc. 76 Ex. 6.)  In contrast, Officer Stelmak maintained in his deposition that although the dog was barking, he was not threatening anyone or instigating the dog.  Therefore, there is a question of material fact regarding whether Officer Stelmak intended to create an imminent apprehension in Plaintiff Gregory Sanford.  Defendant Stelmak's motion for summary judgment on the assault claim in Count V as to Plaintiff Gregory Sanford will be denied.

_____2.      *Battery*

To support a claim for the intentional tort of battery in Pennsylvania, a plaintiff

must show that: (1) the defendant "[acted] intending to cause a harmful or offensive

contact with the person of the other or a third person, or an imminent apprehension of

such a contact, and (2) an offensive contact with the person of the other directly or

indirectly results." RESTATEMENT (SECOND) OF TORTS § 18.  Some physical contact

between the defendant and the plaintiff must occur, or a plaintiff's battery claim fails.  *Id*.

Furthermore, Plaintiffs must specifically identify the officers accused of each tort against

them.  *Seward v. City of Philadelphia*, Civ. A. No. 00-3563, 2002 WL 563580, at *2 (E.D.

Pa. 2002).

Michelle Sanford stated in her deposition she was not physically confronted by a

police officer.  (M. Sanford Dep. 32:17-19, Doc. 76 Ex. 7.)  Therefore, as there is no

evidence of physical contact between Michelle Sanford and Defendants Romanchick,

O'Rourke, and Stelmak, summary judgment will be granted in favor of the Defendants.

Defendants argue that Plaintiff Gregory Sanford's claims for battery should be

dismissed because Plaintiffs fail to specifically identify which officers committed the

alleged tort.  With respect to Officer Romanchick, Plaintiff Gregory Sanford testifed that

he was "bumped" and "roughed up" by Officer Romanchick.  (G. Sanford Dep. 46:7-8,

55:1-4, Doc. 87 Ex. 3.)  Plaintiff Gregory Sanford has demonstrated evidence of an

offensive contact between Plaintiff Gregory Sanford and Defendant Romanchick.

Therefore, there is a question of material fact as to whether a battery occurred.

Specifically, there is a question as to whether Defendant Romanchick intended to "bump"

or "rough up" Plaintiff Gregory Sanford.  Defendant Romanchick's motion for summary judgment as to the battery claim in Count V will be denied.

There is no evidence that Defendants O'Rourke or Stelmak made physical contact with Plaintiff Gregory Sanford.  Therefore, summary judgment will be granted in favor of Defendants O'Rourke and Stelmak with respect to Plaintiff Gregory Sanford's battery claim in Count V.

B.    Count VI - False Imprisonment

A claim of false imprisonment under Pennsylvania law requires: "(1) the detention of another person, and (2) the unlawfulness of such detention." *Renk v. City of Pittsburgh*, 641 A.2d 289, 293 (Pa. 1994).  An actor is liable for false imprisonment if "(1) he acts intending to confine the other or a third person within boundaries fixed by the actor and (2) his act directly or indirectly results in such a confinement of the other, and (3) the other is conscious of the confinement or is harmed by it." *Crivellaro v. Pa. Power and Light Co.*, 24 Pa.D.&C.3d 590, 595 (Pa. Com. Pl. 1982).

A plaintiff's confinement must be complete.  *Caswell v. BJ's Wholesale Co.*, 5 F.Supp.2d 312, 319 (E.D. Pa. 1998).  False imprisonment does not occur if "a known, safe means of escape, involving only a slight inconvenience, exists." *Id.*  "[U]nless physical force or physical barriers are used, there must be some sort of verbal threat to effect the plaintiff's confinement."  *Id.*  A plaintiff's belief that he is not free to leave is insufficient to support a claim of false imprisonment. *Id.*  Rather, a plaintiff must make "some 'attempt to determine whether his belief that his freedom of movement has been curtailed has basis.'" *Id.*  (citing *Chicarelli v. Plymouth Garden Apartments*, 551 F.Supp.

532, 540-41 (E.D. Pa. 1982)).  This attempt may be done, for example, by making a failed request to leave.  *Id.*

Michelle Sanford has failed to demonstrate any evidence that Officers Romanchick or O'Rourke falsely imprisoned her.  Neither made any statements to support an inference that she was confined.  Nor were physical force or physical barriers used by these Defendants to support a claim for false imprisonment.  Therefore, Defendants Romanchick and O'Rourke's motion for summary judgment will be granted as to Michelle Sanford's false imprisonment claim in Count VI.

Defendant Stelmak's actions with respect to Police dog Blitz were previously discussed in Plaintiff Michelle Sanford's assault claim.  However, Plaintiff Michelle Sanford's claim for false imprisonment cannot stand because she failed to make an attempt to see if her movement was restricted.  She did not make any request that Defendant Stelmak move the dog.  Nor did she attempt to step outside of the doorway of her hotel room.  The belief that she may have been imprisoned by the presence of the dog is insufficient to support a claim of false imprisonment.  Therefore, Defendant Stelmak's motion for summary judgment will be granted with respect to Plaintiff Michelle Sanford's false imprisonment claim in Count VI.

Gregory Sanford has similarly failed to demonstrate any evidence that Officer O'Rourke falsely imprisoned him.  Defendant O'Rourke made no statements constituting a verbal threat that Plaintiff Gregory Sanford was confined.  Nor did he make any physical barrier or physical force against Mr. Sanford.  Therefore, Defendant O'Rourke's motion for summary judgment will be granted with respect to Plaintiff Gregory Sanford's

claim for false imprisonment in Count VI.

Defendant Stelmak's actions with respect to Police dog Blitz were previously discussed in Plaintiff Gregory Sanford's assault claim.  Mr. Sanford's claim for false imprisonment against Defendant Romanchick is based on the same set of facts as his assault and battery claims against that Defendant. Plaintiff Gregory Sanford's claim for false imprisonment cannot stand because he made an attempt to see if his movement was restricted.  At one point, he left the hallway and entered a guest's hotel room.  He then reentered the hallway before returning to his room.  The belief that he may have been imprisoned is contradicted by the fact that he had a safe, known means of escape, which is demonstrated by the fact that he left Officers Romanchick and Stelmak in the hallway, and neither of these Defendants pursued him.  Therefore, Defendants Romanchick and Stelmak's motion for summary judgment will be granted with respect to Plaintiff Gregory Sanford's false imprisonment claim in Count VI.

C.      Count VII - Conspiracy

A Pennsylvania state conspiracy claim consists of three elements: "(1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for a lawful purpose, (2) an intent to injure without justification, and (3) an overt act 'done in pursuance of the common purpose or design,' and resultant actual legal damage." *Academy Plaza L.L.C.1 v. Bryant Asset Mgmt.*, 2006 WL 1652687, at *13 (Pa. Comm. Pl. 2006) (quoting *Thompson Coal Co. v. Pike Coal Co.*, 412 A.2d 466, 472 (Pa. Super. Ct. 1979)).

"A single entity cannot conspire with itself and, similarly, agents of a single entity cannot conspire among themselves." *Id*. (quoting *Thomspon*, 412 A.2d at 472).  *See also*

*Shingara v. Skiles*, Civ. A. No. 1:04-CV-0621, 2007 WL 210800 (M.D. Pa. Jan. 24, 2007)

(Conner, J.) (citing *Lackner v. Glosser*, 892 A.2d 21, 35 (Pa. Super. 2006) (finding that

because all defendants were members of the state police, they could not be liable for

Pennsylvania civil conspiracy).

Plaintiffs Gregory and Michelle Sanford claim that Defendants Romanchick,

O'Rourke, and Stelmak conspired to pursue a meritless investigation of a fight after there

was no objective evidence of such a fight.  However, Defendants Romachick, O'Rourke,

and Stelmak are all members of the Scranton Police Department.  As agents of this

single entity, they legally cannot conspire with one another.  Therefore, Defendants'

motion for summary judgment on Count VII will be granted.


**CONCLUSION**

For the reasons stated above, Defendants' motion for summary judgment will be

granted in part and denied in part.  The municipal defendants were previously dismissed

from the case, and therefore no failure to train claim remains in Counts I, II, and III.  The

failure to train claim does not create a claim for supervisory liability, as there were no

allegations of any of the Defendants acting as a supervisor, nor was any evidence

presented that any of the Defendants acted in a supervisory capacity.  Defendants'

motion for summary judgment will be granted as to the Section 1981 claims in Counts I

and II, as Plaintiffs failed to present evidence of racial animus or discriminatory intent.

Summary judgment will be granted in favor of all Defendants as to Plaintiff Michelle

Sanford's unlawful detention and investigation claim in Count III, as there is no evidence

that a seizure of Plaintiff Michelle Sanford occurred.  Defendant O'Rourke and Defendant Stelmak's motion for summary judgment against Plaintiff Gregory Sanford will be granted, as there is no evidence of a seizure by these Defendants.  However, Defendant Romanchick's motion for summary judgment will be denied as to Plaintiff Gregory Sanford, as there is a question of material fact as to whether a reasonable person would feel free to leave in the circumstances of the questioning.   The Court will deny Defendant Romanchick's motion for qualified immunity, because a reasonable person could know of Plaintiff's right to be free from unlawful seizures.  Defendants' motion for summary judgment on the Count IV conspiracy claims will be granted, as there is no evidence of any agreement or concerted action, or any evidence that could lead to an inference of an agreement or concerted action.

Defendants Romanchick and O'Rourke's motion for summary judgment on Count V's assault claim will be granted as to Michelle Sanford, as there is no evidence that they placed her in imminent apprehension of harm or offensive contact.  As there is a question of material fact regarding Defendant Stelmak's intent, and Michelle Sanford's imminent apprehension of harm or offensive contact, Defendant Stelmak's motion for summary judgment on the assault claim in Count V will be denied.  Defendant O'Rourke's motion for summary judgment on the assault claim in Count V regarding Plaintiff Gregory Sanford will be granted.  Defendants Romanchick and Stelmak's motion for summary judgment on Count V's assault claim by Plaintiff Gregory Sanford is denied, as there are material questions of fact regarding Defendants' intent, as well as whether there was imminent apprehension on the part of Gregory Sanford.  Defendants Romanchick, O'Rourke, and Stelmak's motion for summary judgment on Count V's battery claim will be

granted as to Plaintiff Michelle Sanford, as there is no evidence of physical contact between Mrs. Sanford and any of the Defendants.  Defendants O'Rourke and Stelmak's motion for summary judgment on Plaintiff Gregory Sanford's battery claim in Count V will be granted, as there is no evidence that these Defendants made contact with Plaintiff Gregory Sanford.  Defendant Romanchick's motion for summary judgment on Plaintiff Gregory Sanford's battery claim in Count V will be denied, as there is a question of material fact regarding the intent of Defendant Romanchick.  Defendants Romanchick, O'Rourke, and Stelmak's motion for summary judgment will be granted as to Plaintiff Michelle Sanford's false imprisonment claim in Count VI.  Defendant Romanchick, O'Rourke, and Stelmak's motion for summary judgment will be granted as to Plaintiff Gregory Sanford's false imprisonment claim in Count VI..  Defendants Romanchick, O'Rourke, and Stelmak's motion for summary judgment will be granted as to Count VII, as Plaintiffs may not pursue a conspiracy claim against these Defendants due to the single entity doctrine.

An appropriate Order follows.


June 23, 2008                              /s/ A. Richard Caputo
Date                                       A. Richard Caputo
                                           United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

GREGORY AND MICHELLE SANFORD,

    Plaintiffs,

       v.

OFFICER JOHN O'ROURKE, et al.,

    Defendants.

NO. 3:06-CV-0739

(JUDGE CAPUTO)

## ORDER

    **NOW**, this  23rd  day of June 2008, **IT IS HEREBY ORDERED** that Defendants Romanchick, Stelmak, and O'Rourke's Motion for Summary Judgment (Doc. 74) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    (1)    Defendants Romanchick, Stelmak, and O'Rourke's Motion for Summary Judgment is **GRANTED** as to the failure to train claims by Plaintiffs Gregory and Michelle Sanford in Counts I, II, and III.

    (2)    Defendants Romanchick, Stelmak, and O'Rourke's Motion for Summary Judgment is **GRANTED** as to Plaintiffs Gregory and Michelle Sanford in Count I.

    (3)    Defendants Romanchick, Stelmak, and O'Rourke's Motion for Summary Judgment is **GRANTED**  as to Plaintiffs Gregory and Michelle Sanford in Count II.

    (4)    Defendants Romanchick, Stelmak, and O'Rourke's Motion for Summary Judgment is **GRANTED** as to Plaintiff Michelle Sanford in Count III.

    (5)    Defendants Stelmak and O'Rourke's Motion for Summary Judgment is **GRANTED** as to Plaintiff Gregory Sanford in Count III.  Defendant Romanchick's Motion for Summary Judgment is **DENIED** as to Plaintiff Gregory Sanford in Count III with respect to the Section 1983 unlawful detention claim.

    (6)    Defendants Romanchick, Stelmak, and O'Rourke's Motion for Summary Judgment is **GRANTED** as to Plaintiffs Gregory and Michelle Sanford in Count IV.

(7)   Defendant Romanchick's motion for summary judgment based upon qualified immunity as to the Section 1983 claim for unlawful detention by Gregory Sanford is **DENIED**.

(8)   Defendants Romanchick and O'Rourke's Motion for Summary Judgment is **GRANTED** as to Plaintiff Michelle Sanford in Count V's claim for assault. Defendant Stelmak's Motion for Summary Judgment is **DENIED** as to Plaintiff Michelle Sanford in Count V's claim for assault.

(9)   Defendant O'Rourke's Motion for Summary Judgment is **GRANTED** as to Plaintiff Gregory Sanford's claim for assault in Count V.  Defendants Romanchick and Stelmak's Motion for Summary Judgment is **DENIED** as to Plaintiff Gregory Sanford's claim for assault in Count V.

(10)  Defendants Romanchick, O'Rourke, and Stelmak's Motion for Summary Judgment is **GRANTED** as to Plaintiff Michelle Sanford as to Count V's battery claim.

(11)  Defendants Stelmak and O'Rourke's Motion for Summary Judgment is **GRANTED** as to Plaintiff Gregory Sanford in Count V with respect to the battery claim.  Defendant Romanchick's Motion for Summary Judgment is **DENIED** as to Plaintiff Gregory Sanford in Count V with respect to the battery claim.

(12)  Defendants Romanchick, Stelmak, and O'Rourke's Motion for Summary Judgment is **GRANTED** as to Plaintiffs Michelle and Gregory Sanford's false imprisonment claim in Count VI.

(13)  Defendants Romanchick, Stelmak, and O'Rourke's Motion for Summary Judgment is **GRANTED** for all Defendants against Gregory and Michelle Sanford in Count VII.

(14)  Defendant O'Rourke is **DISMISSED** from the case, as no claims remain against him.


/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge